UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| LAURA L. SMITH, | ) |
| *Plaintiff*, | ) |
| vs. | ) |
| | ) No. 1:14-cv-01147-JMS-DKL |
| CAROLYN W. COLVIN, *Acting Commissioner of the Social Security Administration*, | ) |
| *Defendant*. | ) |

## ENTRY REVIEWING THE COMMISSIONER'S DECISION

Plaintiff Laura Smith applied for disability, disability insurance benefits, and supplemental security income from the Social Security Administration ("SSA") in August 2011, alleging a disability onset date of April 12, 2011. [Filing No. 12-5 at 2-15.] Her application was denied initially on October 3, 2011, and after reconsideration on December 9, 2011. [Filing No. 12-3 at 2-7.] Administrative Law Judge Joseph Brinkley (the "ALJ") held a hearing on January 31, 2013, and issued a decision on February 22, 2013, concluding that Ms. Smith was not entitled to receive benefits. [Filing No. 12-2 at 22-33.] The Appeals Council reviewed the ALJ's decision, and issued its own decision on April 21, 2014 in which it also concluded that Ms. Smith was not entitled to receive benefits – although for different reasons than those relied upon by the ALJ. [Filing No. 12-2 at 6-10.] Ms. Smith then filed this civil action, asking the Court to review the denial of benefits pursuant to 42 U.S.C. § 405(g). [Filing No. 1.]

## I.
### STANDARD OF REVIEW

"The Social Security Act authorizes payment of disability insurance benefits and Supplemental Security Income to individuals with disabilities." *Barnhart v. Walton*, 535 U.S. 212,

1

214 (2002). "The statutory definition of 'disability' has two parts. First, it requires a certain kind of inability, namely, an inability to engage in any substantial gainful activity. Second it requires an impairment, namely, a physical or mental impairment, which provides reason for the inability. The statute adds that the impairment must be one that has lasted or can be expected to last . . . not less than 12 months." *Id.* at 217.

When an applicant appeals an adverse benefits decision, this Court's role is limited to ensuring that the Commissioner applied the correct legal standards and that substantial evidence exists for the Commissioner's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review, "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the Commissioner "is in the best position to determine the credibility of witnesses," *Craft v. Astrue*, 539 F.3d 668, 678 (7th Cir. 2008), this Court must afford the Commissioner's credibility determination "considerable deference," overturning it only if it is "patently wrong," *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

The Commissioner must apply the five-step inquiry set forth in 20 C.F.R. § 404.1520(a)(4)(i)-(v), evaluating the following, in sequence:

> (1) whether the claimant is currently [un]employed; (2) whether the claimant has a severe impairment; (3) whether the claimant's impairment meets or equals one of the impairments listed by the [Commissioner]; (4) whether the claimant can perform [her] past work; and (5) whether the claimant is capable of performing work in the national economy.

*Clifford v. Apfel*, 227 F.3d 863, 868 (7th Cir. 2000) (citations omitted) (alterations in original). "If a claimant satisfies steps one, two, and three, [he] will automatically be found disabled. If a claimant satisfies steps one and two, but not three, then [he] must satisfy step four. Once step four

is satisfied, the burden shifts to the SSA to establish that the claimant is capable of performing work in the national economy." *Knight v. Chater*, 55 F.3d 309, 313 (7th Cir. 1995).

After Step Three, but before Step Four, the Commissioner must determine a claimant's RFC by evaluating "all limitations that arise from medically determinable impairments, even those that are not severe." *Villano v. Astrue*, 556 F.3d 558, 563 (7th Cir. 2009). In doing so, the Commissioner "may not dismiss a line of evidence contrary to the ruling." *Id.* The Commissioner uses the RFC at Step Four to determine whether the claimant can perform her own past relevant work and if not, at Step Five to determine whether the claimant can perform other work. *See* 20 C.F.R. § 416.920(e), (g). The burden of proof is on the claimant for Steps One through Four; only at Step Five does the burden shift to the Commissioner. *Clifford*, 227 F.3d at 868.

If the Commissioner committed no legal error and substantial evidence exists to support the Commissioner's decision, the Court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When the Commissioner's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

## II.
### BACKGROUND

Ms. Smith was forty-six years old when she applied for disability benefits in August 2011. [Filing No. 12-5 at 6.][1] Ms. Smith previously worked at a nursing home as a housekeeper and a

---

[1] Ms. Smith detailed pertinent facts in her opening brief, and the Commissioner did not dispute those facts. Because those facts implicate sensitive and otherwise confidential medical information concerning Ms. Smith, the Court will simply incorporate those facts by reference herein. Specific facts will be articulated as needed.

3

laundry worker. [Filing No. 12-2 at 58.] She alleges a disability onset date of April 12, 2011. [Filing No. 12-6 at 2.] Ms. Smith claims that she is disabled based on a variety of conditions, which will be discussed as necessary below.

## III.
## THE ALJ AND APPEALS COUNCIL DECISIONS

In this case, the ALJ issued a decision finding that Ms. Smith was not entitled to benefits, [Filing No. 12-2 at 22-33], and the Appeals Council then affirmed that decision but disagreed with some of the ALJ's findings, [Filing No. 12-2 at 6-10]. Specifically, the ALJ found as follows:

- At Step One of the analysis, the ALJ found that Ms. Smith had not engaged in substantial gainful activity[2] since her alleged onset date of April 12, 2011. [Filing No. 12-2 at 24.]

- At Step Two, the ALJ found that Ms. Smith had the severe impairments of osteopenia, osteoarthritis, degenerative disc disease, hypothyroidism, chronic obstructive pulmonary disorder, scoliosis, generalized anxiety disorder, depression, and mild mental retardation by history (dyslexia). [Filing No. 12-2 at 24.]

- At Step Three, the ALJ considered several Listings, but found that Ms. Smith did not have an impairment or combination of impairments that meets or medically equals the severity of any of the Listings he considered. [Filing No. 12-2 at 24-26.]

- At Step Four, the ALJ found that Ms. Smith had the RFC to perform light work, with various limitations. [Filing No. 12-2 at 26-32.] Specifically, the ALJ found that Ms. Smith "can occasionally lift/carry no more than twenty pounds; can frequently lift/carry no more than ten pounds; can occasionally climb ramps/stairs, balance, kneel, and stoop; can never crawl, crouch, or climb ladders, ropes, or scaffolds; should avoid concentrated exposure to wetness, vibrations, extreme hot or cold temperatures, and workplace hazards including unprotected heights, dangerous machinery, and uneven terrain; is limited to perform unskilled, simple, routine, repetitive tasks; is limited to jobs where there are little changes in work structure; can engage in superficial in-person contact

---

[2] Substantial gainful activity is defined as work activity that is both substantial (*i.e.*, involves significant physical or mental activities) and gainful (*i.e.*, work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 404.1572(a); 20 C.F.R. § 416.972(a)-(b).

with the general public; and is limited to jobs that do not require production quotas and assembly lines." [Filing No. 12-2 at 26-27.]

- At Step Four, the ALJ further determined that Ms. Smith was capable of performing her past relevant work as a "cleaner, housekeeping." [Filing No. 12-2 at 32-33.]

Based on these findings, the ALJ concluded that Mr. Holloway was not disabled. [Filing No. 12-2 at 33.]

Ms. Smith appealed to the Appeals Council, which found on April 21, 2014 that:

- At Step One, it agreed with the ALJ's finding that Ms. Smith had not engaged in substantial gainful employment since April 12, 2011;

- At Step Two, it disagreed with the ALJ that Ms. Smith had the severe impairment of mild mental retardation (dyslexia), but agreed that Ms. Smith had the severe impairments of osteopenia, osteoarthritis, degenerative disc disease, hypothyroidism, chronic obstructive pulmonary disorder, scoliosis, generalized anxiety disorder, and depression;

- At Step Three, it agreed with the ALJ that Ms. Smith has an RFC to "perform a range of light work with postural, environmental, and mental limitations";

- At Step Four, it disagreed with the ALJ and found that Ms. Smith was not capable of performing her past relevant work; and

- At Step Five, it concluded that Ms. Smith was able to perform other jobs in the national economy.

[Filing No. 12-2 at 6-9.]

### IV.
#### DISCUSSION

Ms. Smith makes two arguments in support of her appeal: (1) the ALJ erred in failing to discuss evidence under the criteria of Listing 12.05(C), [Filing No. 14 at 11-15]; and (2) the ALJ

erred in failing to discuss pertinent evidence related to his credibility determination, [Filing No. 14 at 16-18]. The Court will address each argument in turn.

### A. The Appeals Council Decision is the Commissioner's Final Decision

At the outset, the Court notes that in this case, "[b]ecause the Commissioner has delegated the authority to make final decision to the Appeals Council, reviewing courts must defer to the Appeals Council's decision." *Schoenfeld v. Apfel*, 237 F.3d 788, 792 n.2 (7th Cir. 2001) (citing *White v. Sullivan*, 965 F.2d 133, 136 (7th Cir. 1992)). When the Appeals Council considers a claimant's appeal and enters a decision – as is the case here – "it is the Appeal's Council decision which constitutes the Commissioner's final decision for purposes of judicial review under 42 U.S.C. § 405(g)." *Schoenfeld*, 237 F.3d at 792 n.2; *see also* 20 C.F.R. §§ 404.979, 404.981; *Arbogast v. Bowen*, 860 F.2d 1400, 1402 (7th Cir. 1988) (when Appeals Council adopts ALJ's opinion with modification, court reviews "the decision of the ALJ as modified by the Appeals Council").

As discussed in more detail below, Ms. Smith does not address the Appeals Council's decision at all – even after the Commissioner pointed out that it is the final decision that is subject to review here. The fact that Ms. Smith focuses on the ALJ's decision, which is not the Commissioner's final decision, is enough for this Court to affirm the Appeals Council's decision. Nevertheless, out of an abundance of caution and because the Appeals Council does adopt part of the ALJ's opinion, the Court will address Ms. Smith's arguments to the extent they may also apply to the Appeals Council's decision.

### B. Listing 12.05(C)

Ms. Smith argues that the ALJ did not discuss the "paragraph C" criteria of Listing 12.05, which applies to mental retardation. Specifically, she argues that Listing 12.05(C) requires

6

"significantly subaverage general intellectual functioning with deficits in adaptive functioning initially manifested during the developmental period, a valid verbal performance, or full scale IQ of 60 through 70, and a physical or other mental impairment imposing an additional and significant work-related limitation of function." [Filing No. 14 at 11-12.] She contends that the ALJ acknowledged a 2006 intelligence test she underwent, improperly discounted the verbal portion of the test, and did not discuss the remaining criteria of the Listing. [Filing No. 14 at 12.] Ms. Smith asserts that Listing 12.05(C)'s requirement that she have a physical or other mental impairment imposing an additional and significant work-related limitation of function is met because the ALJ had already found that her other severe impairments limited her ability to perform basic work activities and caused the ALJ to limit her RFC to light work with limitations. [Filing No. 14 at 13-14.] Ms. Smith also argues that the ALJ should have sought the testimony of a medical expert, but instead "impermissibly play[ed] doctor." [Filing No. 14-15.]

In response, the Commissioner argues that Ms. Smith's focus on the ALJ's determination that she did not meet Listing 12.05(C) is misplaced because the Appeals Council concluded that the record did not support the ALJ's finding at Step Two that Ms. Smith had an intellectual disability in the first instance. [Filing No. 19 at 8-9.] The Commissioner goes on to argue that even if the Court concluded that the Appeals Council's Step Two finding was unreasonable, any error would be harmless because remand would be futile since Ms. Smith "will not be able to show deficits in adaptive functioning." [Filing No. 19 at 9-10.] The Commissioner discusses medical evidence that she contends supports this conclusion, including: (1) a report from Dr. Floyd Robison which demonstrates that Ms. Smith had "very few if any adaptive functioning deficits….Plaintiff reported to Dr. Robison that she had graduated from high school and had an occupational history as a janitor, housekeeper, and a waitress….[,] had mixed evaluations as a waitress, but…had

7

otherwise been rated as performing well, had never been fired from a job, and got along adequately with coworkers and supervisors…[,] was capable of attending to her personal needs, had extensive daily activities…[, and] could perform errands without help….." [Filing No. 19 at 10-11.] The Commissioner points to the opinions of state-agency psychologists who found that Ms. Smith did not meet or equal a listing, which she argues "further backstop[s]" the Appeals Council's finding. [Filing No. 19 at 11.] The Commissioner also notes that Ms. Smith did not ask the ALJ to secure an additional opinion on medical equivalence. [Filing No. 19 at 12-13.]

On reply, Ms. Smith does not address her focus on the ALJ's opinion rather than the Appeals Council's decision, instead reiterating her arguments from her opening brief and arguing that the ALJ ignored evidence that one medical provider found she did not "have an understanding about things…[and] she has little insight and will not see her role in difficulties with others." [Filing No. 20 at 2 (quoting Filing No. 12-7 at 30-31).] Ms. Smith also contends that the ALJ ignored evidence of her difficulty performing activities of daily living, including that she does not perform dressing, grooming, or bathing on a regular basis, needs someone to go shopping with her, and it can take her an entire day to perform household chores. [Filing No. 20 at 2.] Ms. Smith argues that the ALJ's error in ignoring this evidence is not harmless. [Filing No. 20 at 2-3.]

Because the first ground Ms. Smith raises in support of her appeal – that the conclusion that she did not meet Listing 12.05(C) is erroneous – was not part of the Appeals Council's final decision, it cannot provide a basis for remand. In any event, to the extent Ms. Smith's brief can be read to argue that the Appeal's Council's conclusion that she did not have the severe impairment of mental retardation (dyslexia) was incorrect, the Court rejects that argument. Ms. Smith points to the records of Dr. Russ Rasmussen, which note that she did not "have an understanding about things" and "has little insight and will not see her role in difficulties with others." [Filing No. 20

at 2 (quoting Filing No. 12-7 at 30-31).] But the Appeals Council summarized Ms. Smith's medical records regarding mild mental retardation, and specifically noted that it was discounting Dr. Rasmussen's records because "a review of the record does not reveal a history of mild mental retardation," "Dr. Rasmussen did not conduct IQ testing or support this diagnosis in his examination report," and "a diagnosis of dyslexia is not found anywhere in the claimant's medical record." [Filing No. 12-2 at 7.] The Appeals Council also explained that it did not give weight to Ms. Smith's 2006 Verbal and Performance IQ scored because Dr. Robison "noted that a review of the claimant's adaptive behaviors revealed normal understanding and performance of skills in the areas of communication, personal hygiene/self-care, domestic tasks, community tasks, and interpersonal relations," and ultimately concluded that a diagnosis of mental retardation was not warranted. [Filing No. 12-2 at 7.]

Additionally, Ms. Smith relies upon statements in the record that she does not or cannot perform certain activities of daily living. [Filing No. 20 at 2.] The Appeals Council adopted the ALJ's findings regarding "the degree to which the claimant's mental impairment restricts activities of daily living; presents difficulties in maintaining social functioning; results in deficiencies in concentration, persistence or pace; and produces episodes of deterioration or decompensation in work or work-like settings." [Filing No. 12-2 at 7.] Accordingly, the Court will look to the ALJ's findings regarding Ms. Smith's activities of daily living.

The ALJ found that Ms. Smith had mild restrictions in activities of daily living, and pointed to her statements as well as those of her mother. [Filing No. 12-2 at 25.] Ms. Smith focuses only on the findings regarding activities of daily living in her reply, arguing that she "does not perform dressing, grooming or bathing on a regular basis, and requires someone to go shopping with her; it can take her an entire day and only once per week to perform house chores." [Filing No. 20 at

9

2.] But the evidence Ms. Smith cites does not support her claim that her activities of daily living are so limited. For example, she cites a Function Report in which her mother stated in response to a question asking "[h]ow much time do chores take, and how often does he/she do each of these things?": "sometimes all day – once a week." [Filing No. 20-2 at 2 (citing Filing No. 12-6 at 15).] This statement could reasonably be interpreted to mean that Ms. Smith performs household chores once a week, and they sometimes take her all day. This is not inconsistent with the ALJ's finding that her activities of daily living were mildly restricted. Ms. Smith also points to a Report of Mental Status, wherein Dr. Rasmussen stated that Ms. Smith reported she does not dress, groom, or bathe on a regular basis and stated that she "get[s] dressed about every other day and shower every other day." [Filing No. 20 at 2 (citing Filing No. 12-7 at 31).] Ms. Smith ignores Dr. Rasmussen's conclusion in the same report, however, that Ms. Smith "is able to do these [dressing, grooming, and bathing] on her own." [Filing No. 12-7 at 31.] Again, this evidence is consistent with the ALJ's finding that Ms. Smith's activities of daily living were mildly restricted.[3]

Ms. Smith's argument regarding the ALJ's finding that she did not meet Listing 12.05(C) for mild mental retardation does not warrant remand. The Appeals Council properly explained why it was not giving weight to Ms. Smith's 2006 IQ score and concluded that she did not have the severe impairment of mild mental retardation, so did not even reach the analysis of whether she met Listing 12.05(C). Additionally, the evidence Ms. Smith points to in support of her

---

[3] Ms. Smith's final argument on this issue – that the ALJ should have consulted a medical expert regarding whether she met Listing 12.05(C) – is misplaced because the Appeals Council found that Ms. Smith did not have the severe impairment of mild mental retardation, so did not reach the issue of whether that impairment met a listing.

argument is consistent with the ALJ's conclusion (adopted by the Appeals Council) that Ms. Smith's activities of daily living were mildly restricted.[4]

### C. Credibility Determination

Ms. Smith argues that remand is appropriate because the ALJ used meaningless boilerplate and did not explain the weight he gave to certain evidence. [Filing No. 14 at 16.] She asserts that the ALJ did not discuss the six factors of SSR 96-7p, and did not form "an accurate and logical bridge between the evidence and the result." [Filing No. 14 at 17-18 (quotation omitted).] She argues that "[f]ailure to grapple with these very real symptoms of physical functioning is not cured by the decision simply ticking off a list of [her] history of medical interventions." [Filing No. 14 at 18.]

The Commissioner responds that even though the ALJ used the boilerplate language that the Seventh Circuit has criticized, the ALJ went on to adequately articulate the reasons that he partially discredited Ms. Smith's credibility. [Filing No. 19 at 13-14.] The Commissioner points to the ALJ's discussion of Dr. Robison's findings, which contradicted Ms. Smith's IQ score, argues that the ALJ did not "play doctor," and asserts that Ms. Smith fails to explain which of the factors of SSR 96-7p the ALJ failed to discuss and how that failure would change the end result. [Filing No. 19 at 15-18.]

On reply, Ms. Smith reiterates her argument that the ALJ failed to discuss the factors in SSR 96-7p and states that she "cannot point to specific instances of the ALJ's failure where there is no discussion to address." [Filing No. 20 at 3.]

---

[4] Because the Court finds that the Appeals Council's Step Two finding was reasonable, it need not consider the Commissioner's argument that any error was harmless.

At the outset, the Court notes that the Appeals Council adopted the ALJ's credibility finding. [*See* Filing No. 12-2 at 7 ("The Council adopts the [ALJ's] conclusions regarding the degree to which the claimant's mental impairment restricts activities of daily living; presents difficulties in maintaining social functioning; results in deficiencies in concentration, persistence or pace; and produces episodes of deterioration or decompensation in work or work-like settings"); Filing No. 12-2 at 9 ("The claimant's subjective complaints are not fully credible for the reasons identified in the body of this decision").] Accordingly, the question for the Court is whether the ALJ's credibility finding warrants remand.

The ALJ's credibility determination is typically entitled to special deference. *Scheck v. Barnhart*, 357 F.3d 697, 703 (7th Cir. 2004); *see Sims v. Barnhart*, 442 F.3d 536, 538 (7th Cir. 2006) ("Credibility determinations can rarely be disturbed by a reviewing court, lacking as it does the opportunity to observe the claimant testifying"). Although the absence of objective evidence cannot, standing alone, discredit the presence of substantive complaints, *Parker v. Astrue*, 597 F.3d 920, 922-23 (7th Cir. 2010), when faced with evidence both supporting and detracting from claimant's allegations, "the resolution of competing arguments based on the record is for the ALJ, not the court." *Donahue v. Barnhart*, 279 F.3d 441, 444 (7th Cir. 2002). Consistent with Seventh Circuit authority, the Court will not disturb a credibility finding unless it is "patently wrong in view of the cold record." *Imani ex rel. Hayes v. Heckler*, 797 F.2d 508, 512 (7th Cir. 1986); *see also Herron v. Shalala*, 19 F.3d 329, 335 (7th Cir. 1994) ("[Because] the ALJ is in the best position to observe witnesses, [courts] usually do not upset credibility determinations on appeal so long as they find some support in the record and are not patently wrong").

Ms. Smith first argues that the ALJ improperly used boilerplate language in his credibility determination. She is correct that the ALJ used language very similar to the credibility boilerplate

12

language criticized by the Seventh Circuit. *See Bjornson v. Astrue*, 671 F.3d 640, 644-45 (7th Cir. 2012). This boilerplate language is widely criticized because, among other reasons, it "puts the cart before the horse, in the sense that the determination of [RFC] must be based on the evidence…rather than forcing the [claimant's] testimony into a foregone conclusion"; however, the use of this boilerplate language does not always necessitate reversal of the ALJ's decision. *Filus v. Astrue*, 694 F.3d 863, 868 (7th Cir. 2012). "If the ALJ has otherwise explained his conclusion adequately, the inclusion of this language can be harmless." *Id.*; *see Pepper v. Colvin*, 712 F.3d 351, 367-68 (7th Cir. 2013) ("[T]he simple fact that an ALJ used boilerplate language does not automatically undermine or discredit the ALJ's ultimate conclusion if he otherwise points to information that justifies his credibility determination"). Simply put, when "the ALJ follow[s] the boilerplate conclusion with a detailed explanation of the evidence and his reasoning about credibility,…the boilerplate phrases are not [a] problem." *Pierce v. Colvin*, 739 F.3d 1046, 1050 (7th Cir. 2014).

Although the ALJ used the boilerplate language, he went on to explain why he was finding Ms. Smith only partially credible, including that:

- There were discrepancies between her testimony at the hearing regarding how long she can stand without back pain, how long she can walk without losing her breath, and how long she can sit without having to stand on the one hand, and her function report which states that she is able to walk over two miles at a time, her mother's report that she can walk any distance, and her own testimony that she sometimes walks where she needs to go, [Filing No. 12-2 at 30];

- Ms. Smith's claim that she suffers from mental retardation is contradicted by the fact that Dr. Robison did not provide a diagnosis of that condition in 2006, even with an IQ score of 68, [Filing No. 12-2 at 30];

- Dr. Rasmussen's diagnosis of mild mental retardation was based on the outdated IQ test, which he did not re-administer, and contradicted by Ms.

13

> Smith's statements regarding her activities of daily living, [Filing No. 12-2 at 31]; and

- Ms. Smith completed her own function report, and both she and her mother reported that she plays games on the computer, feeds chickens, performs household chores, performs personal care with no problems, and uses Facebook. [Filing No. 12-2 at 31.] Ms. Smith also reports that she shops in stores, attends church on Sundays, and helps take care of her grandson, [Filing No. 12-2 at 31]. Ms. Smith's mother also noted that Ms. Smith likes to go places and visit people. [Filing No. 12-2 at 31.]

The Court finds that the ALJ's explanation as to why Ms. Smith's testimony was not credible, which included numerous citations to the record, adequately built a logical bridge from the evidence to the ALJ's credibility determination.

Ms. Smith also argues that the ALJ did not address each factor in SSR 96-7p, and that this is reversible error. [Filing No. 14 at 17-18.] But she only argues generally that the ALJ did not discuss the SSR 96-7p factors, and does not direct the Court to any specific factors the ALJ failed to address, nor to any evidence that would support a conclusion different than the conclusion the ALJ reached. Ms. Smith's argument that she cannot "cite to specific language and findings that do not exist in the first place" is unavailing. [*See* Filing No. 20 at 3.] She could have argued, for example, that the ALJ did not discuss the factors that precipitate and aggravate her symptoms, and then pointed to evidence in the record regarding the precipitation and aggravation of her symptoms. She does not do so, instead conclusorily stating that SSR 96-7p requires the ALJ to address all six factors, and that the ALJ did not do so. The ALJ is not required to address every factor or every piece of evidence in his decision, but must support his credibility determination with substantial evidence and must "explain h[is] decision in such a way that allows [the Court] to determine whether []he reached h[is] decision in a rational manner, logically based on h[is] specific findings

and the evidence in the record." *McKinzey v. Astrue*, 641 F.3d 884, 890 (7th Cir. 2011). The Court finds that the ALJ did so here.

In sum, the ALJ adequately explained his credibility determination, and the Court cannot conclude that it is "patently wrong in view of the cold record." *Imani ex rel. Hayes*, 797 F.2d at 512. Accordingly, remand based on the Appeals Council's adoption of the ALJ's credibility determination is not warranted.

## V.
### CONCLUSION

"The standard for disability claims under the Social Security Act is stringent." *Williams-Overstreet v. Astrue*, 364 F. App'x 271, 274 (7th Cir. 2010). "The Act does not contemplate degrees of disability or allow for an award based on partial disability." *Id.* (*citing Stephens*, 766 F.2d at 285). "Even claimants with substantial impairments are not necessarily entitled to benefits, which are paid for by taxes, including taxes paid by those who work despite serious physical or mental impairments and for whom working is difficult and painful." *Williams-Overstreet*, 364 F. App'x at 274. Taken together, the Court can find no legal basis presented by Ms. Smith to reverse the Commissioner's decision. Therefore, the decision below is **AFFIRMED**. Final judgment shall issue accordingly.

Date: May 15, 2015

Hon. Jane Magnus-Stinson, Judge
United States District Court
Southern District of Indiana

Distribution via ECF only to all counsel of record